# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MARCUS LEWIS GARRETT,

        Plaintiff,

    v.

T. PEREZ, et al.,

        Defendants.

_____/

Case No. 1:14-cv-00751-SKO (PC)

FIRST SCREENING ORDER DISMISSING AMENDED COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983

(Doc. 6)

THIRTY-DAY DEADLINE

## First Screening Order

### I.    Screening Requirement and Standard

Plaintiff Marcus Lewis Garrett, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 19, 2014.  On August 20, 2014, Plaintiff filed an amended complaint as a matter of right.  Fed. R. Civ. P. 15(a)(1).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

1   shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

2   state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

3       A complaint must contain "a short and plain statement of the claim showing that the

4   pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

5   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

6   conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937

7   (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and

8   courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572

9   F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual

10  allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

11      Under section 1983, Plaintiff must demonstrate that each defendant personally participated

12  in the deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  This

13  requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*,

14  556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  Prisoners

15  proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and

16  to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

17  (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the

18  plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

19  **II.   Discussion**

20      **A.    Summary of Allegations**[1]

21      Plaintiff is currently incarcerated at California State Prison-Corcoran ("CSP") in the

22  Security Housing Unit ("SHU").  While at California State Prison-Sacramento in 2005, Plaintiff

23  was found guilty of battery on an inmate with a weapon and sentenced to serve a twenty-four

24  month SHU term at CSP.  During service of that twenty-four month term, Plaintiff received eleven

25

26  [1] Plaintiff supported his original complaint with exhibits that were not included with his amended complaint.  (Doc. 1, Comp., court record pp.11-23.)  The Court may take judicial notice of its own records, and in screening Plaintiff's

27  amended complaint, the Court considers the exhibits, which are prison records from Plaintiff's central file, to the extent they are relevant to the analysis of his claims. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see*

28  *also Akhtar v. Mesa*, 698 F.3d 1202, 1208-09 (9th Cir. 2012).

additional SHU terms for misconduct, resulting in a minimum eligible release date ("MERD") of March 12, 2013.[2]  On March 13, 2013, Plaintiff informed Defendant Paprzycki that his SHU term expired the day before and he should be released.  Plaintiff alleges that Defendant Paprzycki was responsible for preparing inmates' case factors for presentation to the Institutional Classification Committee ("ICC") thirty days prior to the expiration of a determinate SHU term, and neither Defendant Paprzycki nor Defendant Pacillas brought Plaintiff before the ICC or otherwise reviewed his continued retention in the SHU.

On March 22, 2013, Plaintiff appeared in person before the ICC for his pre-MERD review, although his MERD date expired ten days earlier.  Plaintiff addressed his retention in the SHU beyond the expiration of his MERD and Defendant Perez told him they could do what they wanted.  Plaintiff responded that he had been disciplinary-free for the past eighteen months and requested the basis for giving him an indeterminate SHU term, in violation of procedural requirements.  Defendant Pacillas told Plaintiff they could give him whatever term they wanted to and his recourse was to file an inmate appeal.  Plaintiff thereafter received a 128G chrono documenting the ICC's action on March 22, 2013, and attributing the untimely review to an unspecified administrative error.  (Doc. 1, Comp., p. 15.)

Plaintiff filed an inmate appeal of the ICC's action.  (*Id.*, p. 20.)  Defendant Pacillas reviewed the appeal at the first level, which Plaintiff alleges circumvented proper procedure given that Plaintiff was appealing an ICC action and Defendant Pacillas was an ICC member.  (*Id.*)  Defendant Pacillas denied the appeal but failed to address the issue of notice.

Plaintiff subsequently received a Rules Violation Report ("RVR") for indecent exposure.[3]  The alleged violation involved a female officer, and Plaintiff filed another inmate appeal challenging the RVR on the ground that it was impossible for the officer to have viewed his cell

---

[2] Plaintiff uses the term "medium" eligible release date in his amended complaint.  (Doc. 6, Amend. Comp., court record p. 7.)  However, under Title 15 prison regulations, MERD is defined as *minimum* eligible release date and MERD is distinguished from *maximum* release date.  Cal. Code. Reg., tit. 15, § 3341.5(c)(2)(B)(3).  Plaintiff's exhibits, attached to his original complaint, confirm that March 12, 2013, was his MERD, or minimum eligible release date.  (Doc. 1, Comp., court record p. 15.)

[3] Also known as a CDC 115.

1   from her location.  The appeal was screened out, which Plaintiff alleges is a "device" used to

2   retaliate and justify his retention in the SHU.  (Doc. 6, Amend. Comp., p. 10.)

3       Plaintiff was found guilty of the RVR and sentenced to a determinate nine month SHU

4   term.  On December 13, 2013, after Plaintiff served his determinate term, the ICC imposed an

5   indeterminate SHU term for program failure.

6       On May 30, 2013, Defendants Perez, Pacillas, and Paprzycki conducted an "R" suffix

7   evaluation using "a California statute to classify Plaintiff as a convicted sex offender," despite lack

8   of formal charges, conviction, or a *Miranda* warning.  (Doc. 6, Amend. Comp., p. 11.)  Plaintiff

9   alleges that his RVRs stated "handle administratively."  (*Id.*)   Further, Plaintiff alleges that

10  Defendant Pacillas affixed the "R" suffix "without procedural review," and altered the regulations

11  and misapplied the "R" suffix criteria.

12      Plaintiff filed an inmate appeal, which caused defendants to take notice, and the appeal was

13  partially granted in that Plaintiff was afforded a procedural review.  (Doc. 1, Comp., p. 12, 16-19.)

14  Plaintiff alleges that the "R" suffix designation was in place "illegally" for two years, and the

15  designation could cause him to register as a sex offender despite the absence of any arrest or

16  conviction for sex-related charges.   Plaintiff alleges that further, the "R" suffix designation

17  endangered his safety with general population inmates.

18      Plaintiff alleges in his amended complaint that since the filing of his original complaint, he

19  has not been afforded notice and a review for release from the SHU to general population, in

20  accordance with prison regulations.  Plaintiff alleges that Defendants Johnson, Oliveira, and Felix

21  are violating his rights to due process and equal protection by failing to release him from the SHU,

22  and Defendant Felix is responsible for preparing Plaintiff's case factors for presentation to the

23  ICC.  Plaintiff alleges the ICC assessed him an indeterminate SHU term on December 31, 2013,

24  and it was approved by a CSR (classification services representative) on February 17, 2014.

25  Plaintiff asserts he was entitled to review of the ICC's action within one-hundred eighty days from

26  December 31, 2013, but he did not receive a timely review.

27      In June, the month Plaintiff expected his review, he submitted several CDC GA-22 inmate

28  requests to Defendant Felix, and Defendant told him he would appear before the ICC in a timely

manner.  However, Plaintiff did not receive a review until July 29, 2014, which was one month late.  During the ICC review, Defendant Felix recommended Plaintiff's continued retention on an indeterminate SHU term, and Defendant Johnson told Plaintiff he would not be released to general population.  Plaintiff addressed the ICC and asked why he was not reviewed in June, and Defendant Johnson told him the review could be late and it was not a big deal.  Plaintiff stated the ICC was retaining him on an indeterminate SHU term beyond six months in the absence of an RVR (CDC 115).  Defendant Johnson informed Plaintiff they could retain him for up to one year per regulations.  Plaintiff responded that they were impermissibly retaining him in the SHU for program failure but applying a gang validation regulation against him.  Defendant Johnson said he would document Plaintiff's dissatisfaction and Plaintiff could file an inmate appeal, but there was no due process issue.

> **B.**     **Claims**
>
> > **1.**     **Due Process Claims**

In his amended complaint, Plaintiff focuses heavily on the language of Title 15 prison regulations, the procedural rights afforded him under the regulations, and Defendants' violation of those rights.  However, Plaintiff is proceeding under section 1983, and he improperly conflates his rights under state prison regulations with his federal constitutional rights.  *See Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for violation of federal law); *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370-71 (9th Cir. 1996) (Federal and state law claims should not be conflated; to the extent the violation of a state law amounts to a deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress.) (quotation marks omitted).  A federal due process claim does not arise out of the mere violation of state prison regulations; the inquiries as to the creation of a protected liberty interest and to the process due if a protected liberty interest is at stake are undertaken independently of prison regulation language.  *Wilkinson v. Austin*, 545 U.S. 209, 221-29, 125 S.Ct. 2384 (2005).

///

### a. **Liberty Interest**

### 1) **SHU Confinement**

Plaintiff alleges that prison officials retained him in the SHU following the expiration of his determinate SHU term, sentenced him to an indeterminate SHU term, and affixed an "R" suffix to his custody designation without due process.[4]   The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. *Wilkinson*, 545 U.S. at 221 (quotation marks omitted).  The Due Process Clause itself confers no liberty interest in freedom from the SHU or from "R" suffix status.  *Id.* at 221.  While a liberty interest in avoiding particular conditions of confinement *may* arise from state policies or regulations, the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is *not* the language of the regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life.  *Wilkinson*, 545 U.S. at 222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)) (quotation marks omitted); *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).  Only those conditions which impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" give rise to a protected state-created liberty interest.  *Wilkinson*, 545 U.S. at 222-23 (citing *Sandin*, 515 U.S. at 484) (internal quotation marks omitted); *Brown*, 751 F.3d at 987.

In his amended complaint, Plaintiff alleges that since the expiration of his determinate SHU term on March 12, 2013, he has been in solitary confinement in the SHU; he is confined to his cell twenty-four hours a day five days a week; and he is deprived of general population activities, credit-earning status, a job, exercise, phone privileges, and freedom from handcuffs. Long-term solitary confinement imposes atypical and significant hardship on inmates, and although the baseline for determining what length of confinement will give to a liberty interest

---

[4] It does not appear Plaintiff is attempting to state any due process claims arising out of the inmate appeals process, but in the event Plaintiff disagrees with that interpretation of his allegations, he is informed that inmates lack a protected liberty interest with respect to the appeals process and they cannot base a claim on how their appeals were processed or on their dissatisfaction with the result. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

1   remains unsettled, the period of Plaintiff's confinement was seventeen months at a minimum and

2   it may be ongoing to date.  *Wilkinson*, 545 U.S. at 223-24; *Brown*, 751 F.3d at 988.  Given the

3   length of Plaintiff's SHU confinement and at the pleading stage, the Court finds Plaintiff's

4   allegations are sufficient to demonstrate the existence of a protected liberty interest in remaining

5   free from the SHU.  *Brown*, 751 F.3d at 988.

6           **2)**    **"R" Suffix Custody Designation**

7       Plaintiff's allegations do not support the existence of a protected liberty interest in

8   remaining free from an "R" suffix designation, however.  An "R" suffix is an inmate custody

9   designation assigned to inmates with a history of sex offenses as outlined in California Penal Code

10  § 290, and "R" suffix inmates are housed in accordance with placement score.  Cal. Code Regs.,

11  tit. 15, § 3377.1(b).   Section 3377.1(b)(3)(A) provides that "[a]n inmate found guilty in a

12  disciplinary hearing of a Division A-1, A-2, or B offense that is equivalent to an offense listed in

13  PC Section 290 shall have an 'R' suffix evaluation completed by a classification committee."

14  Plaintiff was classified as an "R" suffix inmate based on three RVRs involving masturbation.

15  Although the designation may be stigmatizing for inmates, the designation is nevertheless merely

16  an administrative prison custody classification, and the mere reputational stain of an "R" suffix

17  does not impose "atypical and significant hardship on the inmate in relation to the ordinary

18  incidents of prison life."  *Wilkinson*, 545 U.S. at 223 (citing *Sandin*, 515 U.S. at 484) (internal

19  quotation marks omitted); *Grandison v. Stainer*, No. 1:11-cv-01506-LJO-MJS (PC), 2012 WL

20  4026849, at *1 (E.D.Cal. Sep. 10, 2012); *Gaston v. Hedgepeth*, No. C 10-4068 LHK (PR), 2012

21  WL 3903920, at *3 (N.D.Cal. Sep. 7, 2012); *Boyden v. Small*, No. 09-2850 DMS (JMA), 2011

22  WL 455683, at *3 (S.D.Cal. Feb. 3, 2011); *see also Neal v. Shimoda*, 131 F.3d 818, 828-29 (9th

23  Cir. 1997) (discussing sex offender designation in context of extensive, mandatory treatment

24  program).

25       Plaintiff's additional assertion that designating him an "R" suffix inmate amounted to

26  charging and convicting him criminally and in the absence of a *Miranda* warning lack merit.  The

27  designation may arise out of conduct in prison, as it did for Plaintiff, and there is no support for

28

Plaintiff's bare allegation that it results in the imposition of punishment under the penal code reserved for those criminally convicted.[5]  Tit. 15, § 3377.1(b).

### b.  **Process Due**

Having determined that Plaintiff has a protected liberty interest at stake with respect to long-term SHU confinement, the inquiry turns to what process is due under federal law and whether it was provided to Plaintiff.  *Wilkinson*, 545 U.S. at 224.  Teasing out the purported procedural violations from Plaintiff's amended complaint is somewhat challenging given that Plaintiff's pro se status and his due process claims arise out of different events -- some of which are related to Plaintiff's long-term SHU confinement.  Based on Plaintiff's focus on the violation of various prison regulations, he appears to be challenging his retention in the SHU for ten days following his MERD without a timely pre-MERD hearing and the indeterminate SHU term he was assessed following the expiration of his nine-month determinate term for indecent exposure.  The Court will also briefly address that nine-month determinate SHU term.

### 1)  **Ten-Day Retention Following Expiration of MERD**

Beginning with period between March 12, 2013, and March 22, 2013, while Plaintiff alleges that his determinate SHU term *expired* on March 12, 2013, Plaintiff's exhibits and the applicable regulations do not support his assertion that he was entitled to release from the SHU on March 12, 2013.  Rather, Plaintiff's MERD, or *minimum* eligible release date, was March 12, 2013.  Even assuming March 12, 2013, was Plaintiff's maximum eligible release date, federal due process entitles Plaintiff to notice and an opportunity to be heard, and his exhibits indicate he was provided with written notice on March 13, 2013, via a CDCR form 114-D,[6] and he was heard on March 22, 2013, when he personally appeared for his ICC hearing.  *See Mathews v. Eldridge*, 424

---

[5]  The Court notes that in his inmate appeal, Plaintiff argued at the second and third levels of review that he was convicted in prison disciplinary proceedings of Division D offenses while the regulation provides that Division A-1, A-2, and B offenses are eligible for "R" suffix evaluation.  (Doc. 1, Comp., pp. 17, 19.)  Plaintiff included only the first level response memorandum as an exhibit, so it is unknown how prison officials responded to the argument that his prison disciplinary convictions did not subject him to "R" suffix evaluation under applicable prison regulations.  Regardless, however, liberty interests are not created by state prison regulation language, Plaintiff has provided no factual support for his conclusory assertion that the classification somehow subjects him to criminal penalties, and the general stigma that accompanies an "R" suffix classification does not give rise to a protected liberty interest.

[6]  A 114-D is an "Order and Hearing on Segregated Housing" form.  Tit. 15, § 3336(a).

1   U.S. 319, 335, 96 S.Ct. 893 (1976) (adequate notice and meaningful opportunity to be heard are

2   hallmarks of procedural due process); *Toussaint v. McCarthy*, 801 F.2d 1080, 1099-1100 (9th Cir.

3   1986) (segregation for administrative reasons requires some notice and an opportunity to be

4   heard), *abrogated in part on other grounds by Sandin*, 515 U.S. 472.  (Doc. 1, Comp., p. 15.)

5   While it appears Plaintiff was supposed to have a pre-MERD hearing under state prison

6   regulations and the ICC acknowledged Plaintiff did not receive a timely pre-MERD hearing,

7   prison regulations do not define the process due under federal law.  Tit. 15, § 3341.5(c)(2)(B)(10).

8   Federal due process requires, in addition to notice and the opportunity to be heard, that prison

9   officials hold a hearing "within a reasonable time after the prisoner is segregated," and a mere ten-

10  day delay between the expiration of Plaintiff's MERD and the ICC hearing on his continued

11  segregation is simply not of constitutional magnitude because it was not unreasonable.  *Toussaint*,

12  801 F.2d at 1099-1100.

13              **2)      Nine-Month Determinate Term**

14          Next, at the ICC hearing on March 22, 2013, the committee elected to refer the matter to

15  the CSR with the recommendation that Plaintiff be given an indeterminate SHU term based on his

16  disciplinary history, identified by the ICC as disruptive behavior arising out of the three prior

17  RVRs for masturbation in 2010 and 2011.  (Doc. 1, Comp., p. 15.)  The ICC also apparently

18  considered Plaintiff's refusal to sign a CDCR form 2260 "Advisement of Expectations regarding

19  Security Threat Groups (STG) in CDCR," within the context of the eleven additional SHU terms

20  Plaintiff received after he was sentenced to the SHU in 2005.  (*Id.*)  Although the exact dates are

21  unclear, shortly after the March 22, 2013, ICC meeting, Plaintiff received another RVR for

22  masturbation.  (Amend. Comp., p. 10.)  Plaintiff was found guilty and assessed a nine-month

23  determinate SHU term, which expired in December 2013.  (*Id.*)

24          Prison disciplinary proceedings require procedural protections beyond those required for

25  administrative segregation, but nonetheless, "[p]rison disciplinary proceedings are not part of a

26  criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not

27  apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974).  With respect to Plaintiff's

28  disciplinary hearing, his amended complaint is devoid of any facts which suggest he was deprived

of the minimal procedural protections he was due under federal law.  *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985); *Wolff*, 418 U.S. at 563-71; *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987).  While Plaintiff filed an appeal challenging evidence against him, there is no indication he was deprived of any federal due process protections and it does not appear Plaintiff is challenging his nine-month determinate term.   Rather, Plaintiff's allegations indicate his challenges are to the delay in receiving his MERD hearing in March 2013, and his continued retention in the SHU after December 2013.  In any event, there is no support for a finding that Plaintiff was deprived of federal procedural due process with respect to the nine-month determinate SHU term assessed against him for masturbation.

### 3) Indeterminate Term for Program Failure

Finally, following the expiration of his nine-month determinate SHU term in December 2013, Plaintiff was retained in the SHU on an indeterminate term for "program failure."  (Amend. Comp., p. 10.)  Plaintiff alleges his case factors should have been reviewed by a CSR within one-hundred eighty days from December 31, 2013.  (Amend. Comp., pp. 13-14.)  However, Plaintiff did not appear before the ICC until July 29, 2014, one month after the review should have occurred in accordance with state prison regulations.  (*Id.*, p. 14.)

Again, Plaintiff's focus is on prison officials' alleged violation of the letter of the law as defined by state prison regulations.   Plaintiff challenges prison officials' review because it occurred in July 2014 rather than in June 2014, and because he contends prison regulations preclude officials from retaining him in the SHU on indeterminate status for program failure.  (*Id.*, pp. 14-16.)  The Court declines to find that Plaintiff was deprived of the procedural due process protections he was due under federal law merely because his periodic review was conducted one month late, within two-hundred ten days rather than within one-hundred eighty days.  This thirty-day delay, without more, does not rise to a constitutional violation.    Likewise, Plaintiff's mere disagreement with prison officials' interpretation of state prison regulations regarding the legitimacy of the basis for his confinement does not demonstrate he was deprived of federal process.

///

1        **2.        Other Constitutional Claims**

2        Plaintiff also alleges that the actions or omissions at issue were retaliatory, in violation of

3   the First Amendment; constituted cruel and unusual punishment in violation of the Eighth

4   Amendment; and violated his rights under the Equal Protection Clause of the Fourteenth

5   Amendment.   For the reasons which follow, Plaintiff's allegations do not support any viable

6   claims for relief.

7        Plaintiff alleges no facts suggesting that adverse action was taken against him because of

8   his engagement in protected conduct and in the absence of reasonable advancement of legitimate

9   correctional goals.   *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Rhodes v.*

10  *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Wood v. Yordy*, 753 F.3d 899, 904-05

11  (9th Cir. 2014) (mere speculation that prison officials acted out of retaliation does not suffice).

12  Plaintiff's bare allegation that his appeal was screened out and he believes such actions are

13  "devices" to retaliate against inmates does not suffice.   *Wood*, 753 F.3d at 904-05; *Watison*, 668

14  F.3d at 1114-15 *Rhodes*, 408 F.3d at 567-68.   (Doc. 6, Amend. Comp., p. 10; Doc. 1, Comp., p.

15  11.)

16        Plaintiff's Eighth Amendment claim arises out of his classification as an "R" suffix inmate.

17  (Amend. Comp., pp. 12, 19.)   Extreme deprivations are required to make out a conditions of

18  confinement claim, and only those deprivations denying the minimal civilized measure of life's

19  necessities are sufficiently grave to form the basis of an Eighth Amendment violation.   *Hudson v.*

20  *McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted).   To state a

21  claim, Plaintiff must allege facts sufficient to support a claim that prison officials knowingly

22  disregarded a substantial risk of serious harm to him, and the allegation that he was improperly

23  designated as an "R" suffix inmate, leading to stigmatization, simply does not give rise to an

24  Eighth Amendment violation.   *E.g.*, *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970

25  (1994); *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d

26  807, 812-14 (9th Cir. 2009); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *see also Riddle*

27  *v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (fear of harm from other inmates if they

28  discover sex offense conviction does not support Eighth Amendment claim).

1    Finally, Plaintiff's amended complaint lacks any facts suggesting that Plaintiff was treated

2    differently than other similarly situated inmates.  E.g., *City of Cleburne v. Cleburne Living Center,*

3    *Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); *Hartmann v. California Dep't of Corr. & Rehab.*,

4    707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013);

5    *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).   In the absence of disparate treatment

6    between similarly situated groups or individuals, no claim lies.  *Arizona Dream Coalition v.*

7    *Brewer*, 757 F.3d 1053, 1063-64 (9th Cir. 2014); *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d

8    at 1030; *Shakur*, 514 F.3d at 891.

9    **III.**    **Conclusion and Order**

10    Plaintiff's amended complaint fails to state any claims upon which relief may be granted

11    under section 1983.  The Court will provide Plaintiff with an opportunity to file a second amended

12    complaint in the event he is able to cure any of the deficiencies.  *Akhtar*, 698 F.3d at 1212-13;

13    *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

14    Plaintiff's second amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state

15    what each named defendant did that led to the deprivation of Plaintiff's federal rights.  *Jones*, 297

16    F.3d at 934.  Plaintiff must demonstrate a causal connection between each defendant's conduct

17    and the violation of his rights, and liability may not be imposed on supervisory personnel under

18    the theory of mere *respondeat superior*.  *Iqbal*, 556 U.S. at 676-77; *Starr v. Baca*, 652 F.3d 1202,

19    1205-07 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).  Further, although accepted as true,

20    the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level..."

21    *Twombly*, 550 U.S. at 555 (citations omitted).

22    Finally, an amended complaint supercedes the original complaint, *Lacey v. Maricopa*

23    *County*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without

24    reference to the prior or superceded pleading," Local Rule 220.

25    Accordingly, it is HEREBY ORDERED that:

26    1.    Plaintiff's amended complaint is dismissed, with leave to amend, for failure to state

27    a claim under section 1983;

28    2.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.      Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a second amended complaint; and

4.      If Plaintiff fails to file a second amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.


IT IS SO ORDERED.

Dated:   **November 19, 2014**                              **/s/ Sheila K. Oberto**
                                                UNITED STATES MAGISTRATE JUDGE