**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS LEWIS GARRETT, | Case No. 1:14-cv-00751-SKO (PC) |
| Plaintiff, | SECOND SCREENING ORDER DISMISSING ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983 |
| v. | |
| T. PEREZ, et al., | (Doc. 8) |
| Defendants. | |

**Second Screening Order**

**I.    Background**

Plaintiff Marcus Lewis Garrett, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 19, 2014. On August 20, 2014, Plaintiff filed an amended complaint as a matter of right. Fed. R. Civ. P. 15(a)(1). The Court dismissed Plaintiff's amended complaint on November 20, 2014, with leave to amend, for failure to state any claims. Plaintiff filed a second amended complaint on December 15, 2014.

**II.   Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),

(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

**III.    Discussion**

    **A.    Summary of Allegations**[1]

Plaintiff is currently incarcerated at Pelican Bay State Prison and he brings this action against prison officials at California State Prison-Corcoran ("CSP") based on his retention in the

---

[1] Plaintiff supported his original complaint with exhibits that were not included with his first and second amended complaints. (Doc. 1, Comp., court record pp.11-23.) The Court may take judicial notice of its own records, and in screening Plaintiff's second amended complaint, the Court considers the exhibits, which are prison records from Plaintiff's central file, to the extent they are relevant to the analysis of his claims. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1208-09 (9th Cir. 2012).

2

Security Housing Unit ("SHU") beyond his MERD without notice and an opportunity to be heard, and based on their assessment of an "R" suffix against him.[2]

### 1. SHU Confinement

While at California State Prison-Sacramento in 2005, Plaintiff was found guilty of battery on an inmate with a weapon and sentenced to serve a twenty-four month SHU term at CSP. During that twenty-four month term, Plaintiff received eleven additional SHU terms for misconduct, resulting in a MERD of March 12, 2013. On March 13, 2013, Plaintiff informed Defendant Paprzycki that his SHU term expired the day before and he should be released. Plaintiff alleges that Defendant Paprzycki and Defendant Pacillas were responsible for preparing inmates' case factors for presentation to the Institutional Classification Committee ("ICC") thirty days prior to the expiration of a determinate SHU term, and, prior to his MERD of March 12, 2013, they failed to provide Plaintiff with any notice of his continued retention in the SHU.

On March 22, 2013, ten days after his MERD, Plaintiff appeared in person before the ICC for his pre-MERD review. Plaintiff addressed his retention in the SHU past the expiration of his MERD without notice, and Defendant Perez told him they could do what they wanted. Plaintiff responded that he had been disciplinary-free for the past eighteen months and he sought to know the basis for giving him the "severe punishment" of an indeterminate SHU term. (2nd Amend. Comp., 11:2-6.) Defendant Pacillas told Plaintiff they could do what they wanted and he could file an inmate appeal if he wanted. Plaintiff alleges that under Departmental Operations Manual section 62050.13.1, Defendants' failure to make a decision regarding his SHU retention prior to his MERD entitled him to release from the SHU. Plaintiff also alleges that prison officials failed to provide him with adequate notice prior to the expiration of his MERD, thereby violating his federal due process rights; and he alleges that providing him with process after his MERD expiration was not satisfactory and he was entitled to release from the SHU based on their failure to give him notice and an opportunity to be heard prior to his MERD.

Plaintiff filed an inmate appeal of the ICC's action and exhausted his appeal.

---

[2] Minimum eligible release date. Cal. Code. Reg., tit. 15, § 3341.5(c)(2)(B)(3).

3

Plaintiff alleges that he was held in the SHU for more than nineteen months beyond his MERD, and he also alleges that he was confined to the SHU for twenty-one months on an expired MERD. (*Id.*, 12:2-3 & 13:17-19.)

On June 29, 2014, Defendant Johnson reviewed Plaintiff's case, at which time he was on "illegal indeterminate SHU status." (*Id.*, 12:11-17.) Plaintiff placed Defendant Johnson on notice of the untimely notice errors but she failed to fulfill her duty to audit and clarify his case. Defendant Olivera, who was responsible for preparing Plaintiff's C-file matters for presentation to the ICC, failed to recommend his release from the SHU. Defendant Felix also failed to fulfil her duty to clarify Plaintiff's unlawful SHU confinement after Plaintiff placed her on notice of the errors and failed to recommend his release from the SHU.

### 2.  **"R" Suffix**

In addition, Plaintiff alleges that on May 30, 2013, Defendants Perez, Pacillas, and Paprzycki conducted a review for the purpose of assigning him an "R" suffix custody designation. Plaintiff had been issued several Rules Violation Reports ("RVRs") for indecent exposure, which were classified as Division D offenses. Plaintiff alleges that Defendants had a discretionary alternate procedure for inmates found guilty of an "IEX" Division D offense under which an "IEX" label was affixed for six months and in the absence of an offense of the same nature within six months, the IEX designation would be removed. (*Id.*, 14:24-15:2.)

Plaintiff appealed the issue, arguing that Defendants failed to afford him due process. Plaintiff's appeal was partially granted and Defendants "took notice" of the fact that "the illegal suffix had been affixed to Plaintiff's custody without due process [in the form of a] fair hearing for two years." (*Id.*, 15:9-13.) Plaintiff further alleges that because section 3377.1 of Title 15 provides for review of an "R" suffix under Penal Code 290, application of the designation to him "deems" him a convicted sex offender in the absence of criminal charges and a conviction. (*Id.*, 15:16-21.)

### B.  **Due Process Claims**

In his second amended complaint, as in his first amended complaint, Plaintiff focuses heavily on the language of Title 15 prison regulations, the procedural rights afforded him under

4

the regulations, and Defendants' violation of those rights.  However, Plaintiff is proceeding under section 1983, and he improperly conflates his rights under state prison regulations with his federal constitutional rights.  *See Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for violation of federal law); *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370-71 (9th Cir. 1996) (Federal and state law claims should not be conflated; to the extent the violation of a state law amounts to a deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress.) (quotation marks omitted).  A federal due process claim does not arise out of the mere violation of state prison regulations; the inquiries as to the creation of a protected interest and to the process due if a protected interest is at stake are undertaken independently of prison regulation language.  *Wilkinson v. Austin*, 545 U.S. 209, 221-29, 125 S.Ct. 2384 (2005).

### 1.  Protected Liberty Interest

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  *Wilkinson*, 545 U.S. at 221.  To state a claim, Plaintiff must first identify the interest at stake.  *Id.*  Liberty interests may arise from the Due Process Clause or from state law.  *Id.*  The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, i*d.* at 221-22 (citations and quotation marks omitted), and state-created liberty interests arise not from the mandatory language in prison regulations but from the nature of the condition of confinement, *id.* at 222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293 (1995)).  Such "interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84 (citations omitted); *Wilkinson*, 545 U.S. at 221; *Brown v. Oregon*

*Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

### a.   "R" Suffix Custody Designation

Turning first to Plaintiff's "R" suffix claim, an "R" suffix is a custody designation assigned to inmates with a history of sex offenses as outlined in California Penal Code § 290, and "R" suffix inmates are housed in accordance with placement score. Cal. Code Regs., tit. 15, § 3377.1(b). Section 3377.1(b)(3)(A) provides that "[a]n inmate found guilty in a disciplinary hearing of a Division A-1, A-2, or B offense that is equivalent to an offense listed in PC Section 290 shall have an 'R' suffix evaluation completed by a classification committee." Plaintiff was classified as an "R" suffix inmate based on three RVRs involving masturbation, which are equivalent to Penal Code § 314(1) offenses, a section which is in turn listed in Penal Code § 290.[3] (2nd Amend. Comp., 14:14-24 & p. 27.) Although the designation may be stigmatizing for inmates, the designation is merely an administrative prison custody classification, and the bare reputational stain of an "R" suffix does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 223 (citing *Sandin*, 515 U.S. at 484) (internal quotation marks omitted); *Grandison v. Stainer*, No. 1:11-cv-01506-LJO-MJS (PC), 2012 WL 4026849, at *1 (E.D.Cal. Sep. 10, 2012); *Gaston v. Hedgepeth*, No. C 10-4068 LHK (PR), 2012 WL 3903920, at *3 (N.D.Cal. Sep. 7, 2012); *Boyden v. Small*, No. 09-2850 DMS (JMA), 2011 WL 455683, at *3 (S.D.Cal. Feb. 3, 2011); *see also Neal v. Shimoda*, 131 F.3d 818, 828-29 (9th Cir. 1997) (discussing sex offender designation in context of extensive, mandatory treatment program). Plaintiff alleges that "R" suffix inmates have certain job and housing restrictions, but such restrictions do not demonstrate the existence of a protected liberty interest in remaining free from the designation. (2nd Amend. Comp., 16:2-5.)

Plaintiff's additional assertion that designating him an "R" suffix inmate "deems" him a convicted sex offenders without being charged or convicted has no merit. (*Id.*, 15:19.) The

---

[3] Plaintiff argues that because his offenses were classified as Division D offenses, they do not qualify as "R" suffix offenses under Title 15. Even assuming that is so, state prison regulation language is not what gives rise to, or defines the parameters of, a state-created liberty interest, and any alleged deviation from the language of section 3377.1 is not sufficient to demonstrate the existence of a protected liberty interest in being free of an "R" suffix custody designation. *Sandin*, 515 U.S. at 483-84.

designation may arise out of conduct that occurred in prison, as it did for Plaintiff. Tit. 15, § 3377.1(b).

Accordingly, because Plaintiff lacks a protected liberty interest in remaining free from an "R" suffix custody designation, he fails to state a claim for denial of due process. *Brown*, 751 F.3d at 987-88; *Myron*, 476 F.3d at 718; *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003); *Neal*, 131 F.3d at 827-28.

### b.  SHU Confinement

#### 1)  Ten-Day Post-MERD Confinement

Plaintiff alleges that after his MERD expired on March 12, 2013, he was retained in the SHU without notice and an opportunity to be heard until March 22, 2013, in violation of his rights. Plaintiff further alleges that because he was not afforded a pre-MERD hearing, his retention was unlawful and he should have been released from the SHU.

The Court rejects Plaintiff's premise that because prison officials failed to hold a hearing before his MERD and instead held one ten days later, his due process rights were violated. Plaintiff was sentenced to a determinate SHU term and his minimum eligible release date was March 12, 2013. Prison regulations provide for hearing at least thirty days prior to the MERD or during the eleventh month of placement, whichever comes first, and prison officials acknowledged that Plaintiff's case was not presented for a timely pre-MERD hearing due to administrative error. Again, however, the violation of state prison regulations does not suffice to establish a federal due process violation. *Sandin*, 515 U.S. at 483-84. Plaintiff was retained in the SHU ten days beyond his MERD before he had a hearing with the ICC, which simply does not suggest the existence of a state-created liberty interest. *Brown*, 751 F.3d at 987-88; *Myron*, 476 F.3d at 718; *Serrano*, 345 F.3d at 1077-78. The Court finds that Plaintiff fails to state a claim under section 1983 based on his retention in the SHU from March 12, 2013, to March 22, 2013.[4]

---

[4] Even if the Court were to find the existence of a liberty interest, Plaintiff's allegations do not demonstrate the denial of the minimal procedural protections he was due under federal law regarding his continued ten-day SHU confinement. While Plaintiff alleges that his determinate SHU term expired on March 12, 2013, Plaintiff's exhibits and the applicable regulations do not appear to support his assertion that he was entitled to release from the SHU on March 12, 2013. Rather, Plaintiff's MERD, or minimum eligible release date, was March 12, 2013. Regardless, even assuming March 12, 2013, was Plaintiff's maximum eligible release date, federal due process entitles Plaintiff to notice and an opportunity to be heard, and his exhibits indicate he was provided with written notice on March 13,

### 2) **Indeterminate SHU Term**

At his hearing on March 22, 2013, the ICC determined that Plaintiff met the criteria for indeterminate SHU assessment based on his continued disruptive behavior, which included the three RVRs for masturbation with exposure. Although Plaintiff's allegations are somewhat vague, at a minimum he served a SHU term that was between nineteen to twenty-one months. He alleges that he was deprived of visits with his family, the ability to learn a trade, phone privileges, and daily exercise; escorted in restraints; and confined twenty-four hours a day. Long-term solitary confinement imposes atypical and significant hardship on inmates, and although the baseline for determining what length of confinement will give rise to a liberty interest remains unsettled, given the length of Plaintiff's SHU confinement, the Court finds Plaintiff's allegations are sufficient at the pleading stage to demonstrate the existence of a protected liberty interest in remaining free from an indeterminate SHU term. *Wilkinson*, 545 U.S. at 223-24; *Brown*, 751 F.3d at 987-88.

### 2. **Process Due**

Having determined that Plaintiff has a protected liberty interest at stake with respect to long-term indeterminate SHU confinement, the inquiry turns to what process is due under federal law and whether it was provided to Plaintiff. *Wilkinson*, 545 U.S. at 224. On March 22, 2013, the ICC elected to refer the matter to the CSR with the recommendation that Plaintiff be given an indeterminate SHU term based on his disciplinary history, identified by the ICC as disruptive behavior arising out of the three prior RVRs for masturbation, incurred in 2010 and 2011. (2nd Amend. Comp., p. 27.) The ICC also considered Plaintiff's refusal to sign a CDCR form 2260 "Advisement of Expectations regarding Security Threat Groups (STG) in CDCR," and his eleven additional SHU terms based on continued misconduct. (*Id.*)

---

2013, via a CDCR form 114-D, and he was heard on March 22, 2013, when he personally appeared for his ICC hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 (1976) (adequate notice and meaningful opportunity to be heard are hallmarks of procedural due process); *Toussaint v. McCarthy*, 801 F.2d 1080, 1099-1100 (9th Cir. 1986) (segregation for administrative reasons requires some notice and an opportunity to be heard), abrogated in part on other grounds by *Sandin*, 515 U.S. 472. (2nd Amend. Comp., p. 27.) Federal due process requires, in addition to notice and the opportunity to be heard, that prison officials hold a hearing "within a reasonable time after the prisoner is segregated," and a mere ten-day delay between the expiration of Plaintiff's MERD and the ICC hearing on his continued segregation is simply not of constitutional magnitude because it was not unreasonable. *Toussaint*, 801 F.2d at 1099-1100.

The Court notes that Plaintiff's second amended complaint contains fewer facts than did his amended complaint. Plaintiff's focus is now narrower and he doubles down on his assertion that because he was not provided with a pre-MERD hearing, his rights were violated and his subsequent SHU confinement invalid, notwithstanding the ICC hearing held on March 22, 2013. For the reasons previously set forth herein, that minor procedural violation of prison rules provides no basis for a federal due process claim, and Plaintiff must identify facts that evidence the assessment of an indeterminate SHU term without the procedural protections he was due under federal law. Other than the failure to hold a timely pre-MERD hearing, Plaintiff has not identified any specific facts demonstrating the denial of the minimal protections he was due under federal law, whether the SHU term assessment is considered disciplinary or administrative. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985); *Mathews*, 424 U.S. at 335; *Wolff v. McDonnell*, 418 U.S. 539, 556, 563-71, 94 S.Ct. 2963 (1974); *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987); *Toussaint*, 801 F.2d at 1099-1100. Therefore, Plaintiff fails to state a claim under section 1983.

## IV.   Conclusion and Order

Plaintiff's second amended complaint fails to state any claims upon which relief may be granted under section 1983. Plaintiff's due process claim arising out of his "R" suffix designation and his due process claim arising out of his retention in the SHU between his MERD of March 12, 2103, and his ICC hearing ICC March 22, 2013, are not cognizable because there was no protected liberty interest at stake; and his due process claim arising out of his indeterminate SHU term is not cognizable because he failed to show he was denied any of the procedural protections he was due under federal law. Plaintiff was previously provided with detailed notice of the deficiencies in his claims and an opportunity to amend. *Akhtar*, 698 F.3d at 1212-13; *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiff was unable to cure the deficiencies and another opportunity to amend is not warranted given the nature of his factual allegations.

///

///

///

1  Accordingly, this action is HEREBY DISMISSED, with prejudice, for failure to state any
2 claims under section 1983, and the Clerk of the Court shall enter judgment.

IT IS SO ORDERED.

Dated:  **October 27, 2015**                              **/s/ Sheila K. Oberto**
                                                     UNITED STATES MAGISTRATE JUDGE